IOWA DEPARTMENT OF HUMAN
SERVICES, Petitioner,

v.

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Respondent.

No. 91–2990.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1992.

Decided April 10, 1992.

Barbara E.B. Galloway, Des Moines, Iowa, argued (Bonnie J. Campbell, John M. Parmeter and Barbara E.B. Galloway, on the brief), for petitioner.

Mary Dey Purcell, Kansas City, Mo., argued (Gene W. Shepard, and Mary Dey Purcell, of counsel; Frank V. Smith, III, and Robert C. Dopf, Des Moines, Iowa, on the brief), for respondent.

Before BOWMAN and WOLLMAN, Circuit Judges, and WOODS,* District Judge.

WOLLMAN, Circuit Judge.

The State of Iowa appeals from the final decision of the Secretary of Health and Human Services disallowing the payment of certain benefits under the State's Aid to Families with Dependent Children program.  We affirm.

I.

The State of Iowa participates in the Aid to Families with Dependent Children

---

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

(AFDC) program. 42 U.S.C.A. §§ 601 *et seq.* (West 1991). The State distributes funds under the program according to a plan it submits to the Secretary of Health and Human Services (Secretary) for approval. The plan must specify how the state calculates AFDC recipients' need standard, that is, how much people should receive to satisfy their basic needs. 45 C.F.R. § 233.20(a)(2) (1990). The need standard may also incorporate special needs, those items the state deems essential because of an individual's particular circumstances. Since 1980 the State has paid certain education and child care expenses of AFDC recipients under the rubric of special needs.

In 1988 Congress enacted the Family Support Act (FSA). Pub.L. 100–485, 102 Stat. 2343 (codified in scattered sections of 42 U.S.C.) The FSA created the Jobs Opportunities and Basic Skills Training Program (JOBS), a program designed to help AFDC recipients avoid long-term welfare dependency by providing them with education and employment. 42 U.S.C.A. § 681. The FSA authorized the payment of benefits for the education and child care expenses of JOBS participants. 42 U.S.C.A. §§ 602(g), 682(d). Congress designated a separate funding source for JOBS and set a limit on the amount each state could spend. 42 U.S.C.A. § 603(k). Payments for child care expenses are excepted from the JOBS spending cap. 42 U.S.C.A. § 602(g)(3).

The Secretary promulgated regulations prohibiting states with JOBS programs from paying the education or child care expenses of AFDC recipients as special needs. 45 C.F.R. §§ 23.20(a)(2)(v)(B)(2), 255.4(e). Nonetheless, the State submitted to the Secretary a plan amendment proposing that, when JOBS funding was exhausted or unavailable, it would finance certain education and child care expenses as special needs under AFDC. The Secretary disapproved the amendment because it violated the regulations. The State appeals, arguing that the regulations conflict with the Social Security Act as amended by the FSA.[1]

## II.

■ Where a statute is silent or ambiguous with respect to a specific issue, we will uphold the Secretary's implementing regulation if it is based on a permissible construction of the statute. *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Emerson v. Steffen*, 959 F.2d 119 (8th Cir.1992). The FSA authorized the payment of education and child care expenses for JOBS participants, but it did not address whether a state may pay those same expenses as special needs under the AFDC program. Since the statute is silent regarding any prohibition against paying such benefits under AFDC, we will uphold the Secretary's regulatory prohibition if it permissibly construes the statute.

There is no limit on the amount of AFDC funds a state may distribute, but Congress imposed a cap on the amount each state could spend per year under JOBS. This indicates that Congress wanted to limit federal spending for the education expenses of AFDC recipients. *See also* S.Rep. No. 377, 100th Cong., 2d Sess. 31, *reprinted in* 1988 U.S.Code Cong. & Admin.News 2776, 2808 ("A capped entitlement also avoids the prospect of runaway costs to the Federal government."). Congress also wished the JOBS program to be "budget neutral." *Id.* at 2789–90. To ensure that dollars invested in education would generate new taxable earnings by helping recipients become self-sufficient, Congress directed that the Secretary develop performance standards to measure the success of the JOBS program in reducing welfare dependency. *See* 42 U.S.C.A. § 687. Congress also mandated other restrictions on JOBS spending, such as the requirement that the administering agency develop an employability plan for each participant based on that participant's particular circumstances. 42 U.S.C.A. § 682(b).

---

1. The State's motion to strike a portion of the Secretary's appendix is denied.

Since Congress created these restrictions when it enacted JOBS, it is reasonable to infer that Congress intended to preclude paying for expenses covered by JOBS absent the restrictions. The Secretary's prohibition against funding education expenses as AFDC special needs is therefore a permissible construction of the statute. Without the prohibition, a state could circumvent the funding cap and ignore the other restrictions.

We turn next to the Secretary's prohibition against funding the child care expenses of JOBS participants as AFDC special needs. As with the education expenses, Congress attached certain conditions to the payment of child care benefits under JOBS. The State must approve a recipient's work or education activity, for example, and his or her participation in that activity must be satisfactory. 42 U.S.C.A. § 602(g)(1)(A)(i)(II). The cost of the child care must not exceed the local market rate, the facility must comply with local law, and the state must establish procedures to ensure that the child care is subject to health and safety protections. 42 U.S.C.A. § 602(g)(1)(C), (g)(3)(B), (g)(4).

Paying the child care expenses of JOBS participants as AFDC special needs would allow the State to bypass the conditions mandated by Congress. It is reasonable to infer that Congress did not intend to fund the benefits absent the restrictions. The Secretary's prohibition prevents this result. The Secretary's construction of the statute is therefore permissible.

The decision of the Secretary is affirmed.